James A. Murphy and Thomas J. Hamilton, trading as Murphy & Hamilton, *v.* Liberty National Bank, Appellant.

[Marked to be reported.]

*Contract—Building contract—Delay—Architect—Defects in plans and specifications.*

In a scire facias on a mechanic's lien to recover a balance alleged to be due on a building contract which provided that the work should be done according to the plans of the architect, and that " whenever the contractor knows or thinks that the drawings or specifications or both for any part of the work will not produce secure construction, it is his duty then to stop the work and to instantly notify the architect of this in writing " and the work shall not be resumed " until the contractor receives an order in writing from the architect over his own signature as to what is to be done and when to proceed," it appeared that certain arches fell down after they had been built, and that the completion of the work was delayed beyond the stipulated time. Plaintiffs' evidence tended to show that the falling of these arches was through no fault of theirs, but wholly on account of the architect's plans. The plaintiffs notified the architect in writing of the entire insufficiency of the iron work to support the arches, and received a reply from the architect in writing that the work would be done by other parties. They never received notice from the architect to proceed with the work, and the fallen arches were replaced by others. The defendants claimed a deduction for the work which was done by other parties and the penalty which was provided in the contract for the delay beyond the specified time for completing the building. The court left it to the jury to say whether the falling of the arches was the fault of the plaintiffs or of the architect. The jury found for the plaintiffs. *Held*, (1) that if the plans were defective, the rule that a contractor must complete his contract notwithstanding any accident by inevitable necessity did not apply to the facts of this case; (2) that the plaintiffs did all that

was required of them under the contract when they stopped work and
notified the architect; (3) that, assuming that the plans were defective,
the plaintiffs did not lose their lien because the material which they had
placed in the arches had been removed and other material substituted in
its place; (4) that if the arches fell and the work was delayed on account
of the defective plans of the architect, the expense of rebuilding the arches
and the penalty provided by the contract for the delay of the work beyond
the stipulated time could not be deducted from the amount due on the
contract.

*Building contract—Extras—Waiver.*

A building contract provided that no claims for extras should be made
by the contractors " unless the same shall be done in pursuance of a
written order from the architect." There was evidence that the architect
notified certain of the subcontractors to do some extra work, but gave no
notice or written directions to the contractors. *Held*, that it was for the
jury to say whether the provision of the contract as to written notice had
been waived.

Argued Nov. 3, 1897. Appeal, No. 102, Oct. T., 1897, by
defendant, from judgment of C. P. No. 1, Allegheny Co.,
Dec. T., 1895, No. 371, on verdict for plaintiffs. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Assumpsit on a building contract. Before COLLIER, J.
The case was previously reported in 179 Pa. 295.

The facts appear by the opinion of the Supreme Court, and
by the charge of the court below which was as follows:

It is admitted that the plaintiffs and the defendant entered
into an agreement by which the plaintiffs, Murphy & Hamilton,
were to build for the defendant a substantial and fireproof build-
ing for a bank building for the sum of $50,000. It appears by
the evidence, that the plaintiffs, Murphy & Hamilton, in pur-
suance of their written agreement, proceeded to erect the build-
ing, and did finally build it; that upon that agreement $35,000
was paid by the defendant, then some dispute arose between
the parties, and the balance, amounting to $15,000, was not
paid, nor has it been paid yet. The plaintiffs then brought this
suit, after filing a mechanic's lien, to recover that $15,000 al-
leged to be still due and unpaid, together with some $1,565 and
some cents in addition to the $15,000, alleging that that addi-
tional sum is for extras that they were entitled to, making alto-

gether sixteen thousand and some hundred dollars. The counsel on each side will give you a statement of their items of claim so you can see just what they claim, and apply the evidence as you may think it right in governing your verdict. . . . . Now, it appearing by the contract given in evidence, and by the testimony, that the building was not finished, or substaptially completed, to the satisfaction of the architect of the defendant at the time that the plaintiffs agreed to finish it, prevents the plaintiffs from recovering the whole amount unless they satisfy you that the delay was not their fault, but was occasioned by the fault of the defendant. . . .

You will remember, as stated by counsel, the agreement was that if the plaintiffs, Murphy & Hamilton, got the building finished by or before a certain date, they should be allowed $20.00 extra per day; but if they ran past the date when it was to be substantially finished and completed to the satisfaction of the architect of the defendant, they, the plaintiffs, should pay $20.00 per day. It was fair on both sides, so far as that goes.

The plaintiffs, in order to get rid of that penalty, whatever it would be, from the time the building ought to have been completed to the time it actually was completed, must satisfy you that the delay was not their fault, but was the fault of the defendant. The plaintiffs allege that that was so. They allege that the reason they ask you to give them the full amount and not allow any of the penalty of $20.00 a day is because they were prevented from completing the building on the date the contract calls for, by the fault of the defendant, and not by their own fault. They allege that the falling down of this fireproofing and clearing it away, took up their time and prevented them from fulfilling their contract upon the date agreed to. They allege that in their statement and in their evidences. Both sides have given evidence tending to prove their side of the case, and you must reconcile it if you can, remembering that the burden of proof is upon the plaintiffs. The weight of the evidence must be upon their side, but weight does not necessarily mean the greater number of witnesses; it means strength—the strength that carries conviction to your minds, irrespective of numbers, although greater numbers, if they are equally reliable upon the stand before you would give the greater weight.

[The plaintiffs have endeavored to establish to you that the

falling down of these arches mainly occasioned the delay, and that was owing, not to their material, nor the way they did their work, but to the fault of the architect, or his want of judgment in preparing the plans and specifications; that the beams were placed fourteen feet and four inches apart; that the iron structure was not fit for the purpose, and that the plans and specifications showing how it was to be done were such that it would necessarily fall if the work was done as shown and directed by those plans and specifications. Examine that point first. Is that so? And in determining that, as well as all other questions in the case, you will remember that the burden of proof is upon the plaintiffs. They allege that it was not the fault of the Pittsburg Terra Cotta Lumber Company, which put these arches in, at all, either in material or workmanship, but that it was due to faulty plans and specifications, which they tried to carry out. If the plaintiffs have satisfied you that the weight and strength of the evidence is on their side, then they, Murphy & Hamilton, would not be responsible for that; and then, if that caused the delay, they should not be deprived of any of the amount of their claim on that account.] [3] . . . .

The testimony of the plaintiffs' witness tends to show that the fault was in the iron construction somewhere, by reason of the alleged faulty plans and specifications, and that it was not the fault of the plaintiffs, Murphy & Hamilton, nor of the Pittsburg Terra Cotta Lumber Company, which amounts to the same thing, as they were subcontractors under Murphy & Hamilton, who, as the general contractors, would be bound for the whole thing, whatever it might be. On the other hand, the testimony of the defendant tends to show that the trouble was not due to faulty plans and specifications, but to the way in which the work was done by the contractors; that that caused it and that afterwards it was put in by another company and is good and solid. You must determine between them. Weigh it carefully, because that is the great question in the case. There are some others, but that is the great question in the case. If you should come to the conclusion that the weight of evidence is not upon the side of the plaintiffs, then they would have to allow $20.00 per day to the defendant for the lost time, which would be for whatever the number of days was that the building was not completed after the date required by the con-

tract, because that would not be unjustifiable, the way the contract is made. It is the parties themselves agreeing to an assessment, which they have a right to do unless it is manifestly unjust and unjustifiable some way. That is the rule, the parties having made it themselves. If you should come to that conclusion, then you would have to allow whatever the number of days was, to the defendant. [But, on the other hand, if, after taking everything into consideration, you are satisfied by the weight of the evidence that it was not the fault of the work done there by the plaintiffs, but that it was the fault of the plans and specifications made by the architect, then the plaintiffs would not be held liable at all on that account. If you come to the conclusion that that caused it, then the plaintiffs would not be required to allow anything for the delay in completing the building, over the time specified in the contract.] [4]

[The next question is the extras. Part of them, amounting to six hundred and some dollars, the proof tends to show, was caused by the falling of these arches, in the work they had to do in clearing up and what was described to you in the evidence. If the fault was the architect's, or his mistake in judgment, then those items should be allowed to the plaintiffs, because it would not then be their fault.] [5] If it was their fault or the fault of the Terra Cotta Lumber Company, then those items could not be allowed to them, because even outside of the law, common sense would tell you that if a man makes a mistake in a building, he cannot recover for the extra trouble in rectifying his own errors. [So, if you find that these extras were occasioned by the mistake of the architect in furnishing faulty plans, then they should be allowed.] [6] Then the balance is about $900 for the extras ($1,500 altogether), and upon that the defendant admits five hundred and some dollars in the papers and by the testimony, but denies the balance, on the ground that the contract requires in writing (and it does) that extras shall not be charged for, unless upon written order of the architect. That is good law in a contractor, but there is another law that that provision can be waived by acts of the party and by orders of the defendant itself, and in this case it is said that some, if not all, of the balance were waived in this way; that the architect did not go to the plaintiffs, contractors, at all, but went to the subcontractors and had the work done,

and that the contractors have got to pay these extra men—and that that is a waiver. I say to you that as to any items where that is a fact in the case, that is true; that was a waiver. It was a waiver because the place to go was not to the subcontractors and then make the general contractors probably liable for it, but there is no evidence in the case of any items outside of that, where the rule has not been complied with, and only as to those items that the subcontractors were directed by the architect to do, and did do, could you allow the plaintiffs, because the contract is very plain, and it applies to ordinary extras; and if the contractors undertook to do them without any order in writing, unless they show something to relieve them, they cannot claim for them. . . .

Another, and the second important item of the defense in this case, is that after the arches fell, some time elapsed during which no progress was made on the building, and the architect alleges that he complained about it and wanted something done; that he spoke to the plaintiffs about it and, he alleges, that they agreed he might go on and get the new fireproofing done by another company, and that under that permission he did have the fireproofing replaced by another company—the Columbian Fireproofing Company, I believe. Now, that raises this question: [If the arches fell by reason of mistake of judgment in the plans and specifications of the architect, then, if the plaintiffs, Murphy & Hamilton, objected to his going on and getting somebody else to do it, the architect, under the owner, could not go on and do it at the expense of the contractors. You understand the court: if the fault of the falling of the arches was because of a mistake of judgment of the architect in not giving proper plans and specifications, then the owners, without the consent of, and particularly against the protest of the plaintiffs, could not go on and put somebody else in to do the work and charge the contractors with it, for the simple reason that they should have a right to say what should be done.] [7] They were contending that it was not their fault. But if it was the fault of the Terra Cotta Lumber Company, that is, the contractors, in not doing their work properly, then the architect, after telling them and showing them why it was defective and they would not correct it in a reasonable time, had a right to go and get it done by somebody else, because he had the power under this

general agreement, and he would have the power anyhow after giving notice as I have said, if it was reasonably and properly done, at a fair price, and he would have a right to set that off against Murphy & Hamilton, the contractors. But the plaintiffs say that when the architect proposed to get somebody else to do the work they actually objected and said they would not give their consent. The defendant alleges, on the contrary, that it was the fault of the terra cotta workmen; that the building was lying there and nothing being done; that it called the attention of the contractors to it but they did nothing, and that then it went and had it done, with the consent of the contractors, although it would have a right to get it done without their consent if those were the circumstances.

Now, I will go over the main questions again. In the first place, go over all the evidence and determine whether these arches fell on account of bad workmanship of the Terra Cotta Company, or whether they fell because of a mistake of judgment of the architect in his plans and specifications. If you find that the falling of the arches was caused by bad workmanship on the part of this Terra Cotta Company, then Murphy & Hamilton, the plaintiffs, must have deducted from their claim the number of days that they failed to deliver the building after the time specified, because that would be their fault. [On the other hand, if you find that the falling of the arches was occasioned by a mistake in the plans and specifications of the architect, then the plaintiffs, not being responsible for it, because it would not then be their fault, would not, if the delay was caused by that, have to pay anything, because the building was not delivered by the specified time.] [8] [When you get that established to your satisfaction by the weight of the evidence, remembering that the burden of proof is upon the plaintiffs; then, if the falling of these arches was occasioned by the blunder of the architect, this $600 extra claim that was caused by reason of that, the plaintiffs would be entitled to.] [9] If that was not the cause, but if it was the fault of the Terra Cotta Company, then they would not be entitled to it. [As to the balance of the extras, over the amount admitted here (five hundred and some dollars) any items that the architect ordered the subcontractors to do without consulting the plaintiffs, and that were done, should be allowed to the plaintiffs, but no others.] [20]

Then, last, as to this other large item of $4,100, with interest and costs, that all depends upon how you find the facts as I have stated to you. If the falling of the arches was caused by the carelessness and bad work and bad materials of the Terra Cotta Company, and the work was delayed by that, and the architect complained of it to the contractors, and they would not do anything, he had a right, even without asking them, to go on and have it done and charge the cost of it, as a set-off, to the plaintiffs, because it would then be their fault. [On the other hand, if it was the fault of the architect's plans and specifications, then he could not put somebody else in to do the work without an express agreement with the contractors, Murphy & Hamilton.] [10]

Plaintiffs' points and the answers thereto among others were as follows:

5. If the jury find that the fire-proofing as put in by the Pittsburg Terra Cotta Lumber Company fell, not by reason of any defect in the character of the work as done by that company, but by reason of insufficient and insecure design of steel and iron work by the architect, then plaintiffs are not responsible for the cost of replacing the same in any way. *Answer:* Affirmed, unless you find that it was replaced by an express agreement with the plaintiffs. Bill sealed for defendant. [1]

6. If the jury find that the delay in the completion of the work beyond the time fixed in the contract was caused by the lack of skill in the architect in designing the work, then the defendants are not entitled to set off against the plaintiffs' claim any per diem compensation for delay in the work. *Answer:* Affirmed and bill sealed for defendant. [2]

Defendant's second point and the answer thereto were as follows:

2. This suit being based upon a mechanic's lien, and it being admitted that the fireproofing in defendant's building was not furnished or put in by plaintiffs, or by any one under contract with plaintiffs, plaintiffs cannot recover the balance here claimed to the extent of the cost of the materials furnished and work done by the Columbia Fire-Proofing Company, in the action. *Answer:* Refused. You can find the facts and apply them to the law as I have given them to you in my charge, and bill sealed for defendants. [11]

Verdict and judgment for plaintiffs for $17,336.   Defendant appealed.

*Errors assigned* were (1–11, 20) above instructions, quoting them.

*M. W. Acheson, Jr.*, with him *Geo. C. Wilson* and *Wm. D. Evans*, for appellant.—Alleged defects in the plans and specifications and alleged mistakes of the architect cannot avail the plaintiffs under the contract and undisputed facts : Smoot's Case, 15 Wall. 36 ; Lorillard v. Clyde, 142 N. Y. 456 ; Dermott v. Jones, 2 Wall. 1 ; Thorn v. Mayor of London, L. R. 1 App. Cases, 120 ; Stees v. Leonard, 20 Minn. 494 ; School Trustees v. Bennett, 27 N. J. L. 513 ; Meriwether v. Lowndes County, 89 Ala. 362 ; Cutcliff v. McAnally, 88 Ala. 507 ; Tompkins v. Dudley, 25 N. Y. 272 ; Bussman v. Ganster, 72 Pa. 285.

This action being by general contractors upon a mechanic's lien, there can be no recovery except for work and labor done : Presbyterian Church v. Stettler, 26 Pa. 246 ; Wigton & Brooks's App., 28 Pa. 161 ; Schukraft v. Ruck, 6 Daly, 1.

In view of the explicit provisions of the contract the allowance of extras was wholly improper.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellees, cited, Balph v. Liberty Nat. Bank, 179 Pa. 430 ; Moore v. Carter, 146 Pa. 492 ; Linden Steel Co. v. Mfg. Co., 158 P. 238.

OPINION BY MR. JUSTICE GREEN, January 3, 1898 :

There was a large amount of very intelligent and important testimony on the trial, to the effect that the cause of the falling of the arches was the weakness and insufficiency of the iron work to sustain the weight of the arches.   As this was one of the questions submitted to the jury, and the verdict was in favor of the plaintiffs, it must be presumed that they found the iron work to be insufficient, and that this was the cause of the falling of the arches.   A careful reading of the testimony on both sides convinces us that the finding of the verdict on that subject was correct.   The case is practically argued on the part of the defendant upon the basis that the verdict is conclusive in relation to this matter, and therefore the rule is invoked that

the contract made by the plaintiffs is absolute and binds them to complete the building in accordance with the specifications, in any event, and notwithstanding any occurrences, or inconveniences or obstructions which may have arisen, unexpectedly or otherwise, to interfere with the work. Thus the total collapse of the building from defects in the foundation or from violent tempest, or its destruction by fire while in the course of construction, will not relieve the contractor from his obligation to finish the building and deliver it in completed condition to the owner, unless such contingencies have been specially excepted by the terms of the contract. There is no doubt that the rule is well established and is the settled law both in England and in this country, including our own state. It is well expressed in the case of School Trustees v. Bennett, 27 N. J. Law Rep. 513, thus, " No rule of law is more firmly established by a long train of decisions than this, that, where a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. . . . If before the building is completed or accepted, it is destroyed by fire or other casualty, the loss falls upon the builder ; he must rebuild. The thing may be done, and he has contracted to do it. No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundation in good sense and inflexible honesty. He that agrees to do an act should do it, unless absolutely impossible."

The rule is not strictly and in terms applicable to this case, because the building was completed and was accepted by the owner. And it was completed by the present plaintiffs, the contractors. But a portion of the work was done by another contractor. That is, the filling in of the arches between the beams where the arches had fallen out or been removed for fear of their falling, was done by another sub contractor than the ones who had put in the first fireproofing. This was done at the instance of the architect, and the question is, so far as this matter is concerned, who is responsible for that work, and are the plaintiffs chargeable with a deduction on that account. There is perhaps another reason why the rule invoked for the defendant, is inapplicable. It has an exception if the work to

be done is absolutely impossible. Upon the theory that the
arches fell out because of the weakness and insufficiency of the
iron work to support them, it is manifest that if the arches were
replaced with the same material and with the same iron work,
they would simply fall out again, and would continue doing
this as often as the work was repeated. Hence if the plans and
specifications were strictly followed, as it is contended they
should be, it would simply result that the building never could
be finished in accordance with them, and the case would be
within the exception of impossibility. There was however still
another reason why the rule invoked by the defendant does not
apply. As soon as the plaintiffs discovered that the beams were
being distorted out of position by the pressure of the arches,
they proceeded to comply with another provision of the con-
tract which is in these words : " Whenever the contractor or his
men know or think that the drawings or specifications, or both,
for any part of the work will not produce secure construction,
it is his duty to then stop the work, and to instantly notify
the architect of this in writing ; and the part of the work so
found fault with is not thereafter to be executed until the con-
tractor has received the order in writing from the architect over
his own signature as to what is to be done and when to proceed."
On January 4, 1895, the plaintiffs sent letters to both the build-
ing committee of the bank and the architect, notifying them of
the entire insufficiency of the iron work to support the arches,
and inclosing in the letter to the building committee the report
of engineer Diescher to that effect, and letters from the Pitts-
burg Terra Cotta Lumber Company who were putting in the
fireproofing, of the same purport. To this letter on the next
day, the architect, Osterling, made reply saying that they, mean-
ing apparently the bank and himself, would have the fireproof-
ing done by others. Mr. Murphy's oral testimony confirms this,
and he said the bank then put a light flooring of concrete and
no terra cotta whatever, and employed other persons to do it.
Under the section of the contract above quoted the contractors
stopped the work, which was exactly what the contract re-
quired. They never received any notice or order in writing
from the architect to proceed with the work, but did receive a
notice that the work would be done by others, and that is what
was done. This disposition of the matter of course takes the

case out of the operation of the rule contended for by the defendant, and the plaintiffs were clearly not guilty of any infraction of the contract in respect of their action. The case is thus narrowed down to the inquiry, whether the falling of the arches was the fault of the contractors. They claimed it was not, because the iron work from which it resulted was done in precise accordance with the plans and specifications, and as these were made by the architect, and the plaintiffs were, by the terms of the contract, to follow them explicitly, they were not responsible for the consequences of his mistake. Substantially this was the issue that was submitted to the jury, and was contested before them. The architect, of course, testified that the iron work was sufficient according to his plans and specifications, but the evidence to the contrary by disinterested and very competent engineers and experts was very strong, and the great weight of the testimony was decidedly against him. It was much strengthened by the testimony of the engineer of the firm of T. H. Brooks & Company who made the iron work, who said that he told Osterling, the architect, while the work was going on, that the iron was not near strong enough, and that he ordered his men to leave the building in consequence of the weakness of the iron supports. It is not necessary to review the testimony on this subject. There was a great abundance of it, and the verdict of the jury was fully warranted by it. In view of these considerations, the rule of absolute obligation on the part of the contractors is inapplicable to the case, and, of course, cannot control its determination. These views dispose of the first ten assignments of error, and they are dismissed. It also follows that the delay in the completion of the building was not the fault of the contractors, and they did not incur the penalty of delay beyond the stipulated time of completion.

The eleventh assignment is not sustained. The contract provided that either tile or improved make of concrete construction may be used, and that bids should state what material is contemplated. The contractors having named tile as their material, and their bid having been accepted, and there being no defect in the tiles used, this was a compliance with the contract, and when they actually furnished perfectly good tiling and placed it in the arches, they complied with their contract in

that regard. If it fell, through no fault of theirs, and the architect and the bank selected a new and different material and put it in themselves, in place of what had been already furnished by the contractors, the contractors were not deprived of their right of lien because their material was not in the building at its completion. Its absence was no fault of theirs, and the defendant certainly did not have an arbitrary right to remove any proper material actually put in place, and then claim an exemption from any lien which embraced the displaced material. The authorities cited for the defendant in this connection are the undoubted law, but they have no application to such facts as these.

The remaining assignments relate to the claim for extras. There was an amount of $522.38 of extras, which was admitted to be due. A portion of the claim was for work done in removing the material that had fallen from the arches, and the remainder of the material that had not fallen. This it is claimed was done by specific orders of the architect to the subcontractor, without consulting with the plaintiffs. There were a few other items, but as to the whole, the evidence raised a question of waiver of the provision of the contract which required that no claims for extras should be made " unless the same shall be done in pursuance of a written order from the architect." There was evidence enough on that subject to justify the court in leaving the question to the jury, and we cannot say there was error in so doing. There was a large diminution by the verdict of the amount of the plaintiffs' claim for extras, and it is not at all clear that any injustice was done to the appellant by the verdict of the jury in regard to these matters. We do not think that error has been shown in any of the assignments after the eleventh, and they are therefore all dismissed.

Judgment affirmed.