## Moore et al. *v.* Whitty et al., Appellants.

Argued December 4, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Walter B. Saul,* of *Saul, Ewing, Remick & Saul,* for appellants.—Where a party by his own contract creates a duty or charge on himself, he is bound to make it good, if he may, notwithstanding any accident or inevitable necessity, because he might have provided against it by his contract: Herter v. Mullin, 159 N. Y. 28; Dolan v. Rodgers, 149 N. Y. 489; Case v. Cushman, 3 W. & S. 544; Commercial Coal Mining Co. v. Coal Mining Co., 293 Pa. 39.

It is an accepted rule of law that where the basis of a contract is the continued existence of a thing, or a certain state of facts, the destruction of the thing, or a

substantial change in the state of facts, terminates the contract and discharges all obligations assumed under it.

*Robert T. McCracken,* with him *Charles A. Wolfe* and *Roberts & Montgomery,* for appellees.—The threat of the labor unions to strike if plaintiffs' nonunion workmen were permitted to work on the buildings in question was not a change of condition rendering performance of defendants' contracts impossible: Purvis v. United Brotherhood of Carpenters, 214 Pa. 348; Plant v. Woods, 176 Mass. 492; Erdman v. Mitchell, 207 Pa. 79; Bausbach v. Reiff, 244 Pa. 559.

OPINION BY MR. JUSTICE FRAZER, January 6, 1930:

Plaintiff sued in two separate actions in assumpsit to recover damages for breach by defendants of contracts for installation by plaintiffs of tile, marble, and bathroom fixtures in two disconnected apartment houses to be erected by defendants. The cases were tried together by agreement, and resulted in verdicts for plaintiffs. The court below entered judgment on the verdicts. Defendants appealed.

Defendants had a contract for the erection of the apartments in question and plaintiffs, being engaged in the business of supplying materials and labor for the installation of tile and marble in buildings, submitted estimates for the furnishing and equipping of the bathrooms in both buildings. Contracts were drawn on printed forms which contained clauses to the effect that all work should be done by union labor. One of plaintiffs called defendants' attention to the fact that when they were asked to estimate on the work, defendants were informed they would not do so unless they could perform the contract "under open shop principles." The witness stated, however, in effect, that they had worked with nonunion men on other buildings where union men were employed without having trouble and believed they could do so on these buildings. The clause

requiring union labor was then stricken out of both contracts before being signed. Subsequently it appeared the labor union threatened to call a strike if plaintiffs were permitted to proceed with their work by nonunion men and defendants, yielding to their demand, refused to permit plaintiffs to proceed with the contract and arranged to have the work done by employers of union labor.

Prima facie, the fact that the clause requiring employment of only union workmen was stricken out of the contracts indicates the parties intended to eliminate this condition, and left plaintiffs free to employ whatever labor they saw fit. Defendant made a formal offer to prove, however that previous to, and at the time of signing the contracts, when the parties discussed the labor situation, plaintiffs represented that their employees would be able to work on the buildings and, relying on this statement, defendants permitted the clause in question to be stricken out of the contract; that, after the work on the buildings had started, labor conditions changed and the labor union had taken the position that they would not permit their members to work on a job where nonunion laborers were also employed and it was, consequently, no longer possible to carry out the contract by the use of nonunion employees; that there had been an actual strike on their building as a result of the attempt by defendants to use nonunion men in another part of the work; and that defendants were informed by union officials there would be another strike called if plaintiffs were permitted to start work with nonunion men. The contention from such facts was that the change of circumstances resulting from this new attitude on the part of the labor union rendered impossible defendants' performance and relieved them from liability for violating their contracts. This evidence was rejected by the court below as being insufficient to excuse the breach of the contract by defendants.

The general rule is that mere inconvenience, though it works a hardship on a party, does not excuse him from the performance of an absolute and unqualified undertaking to do a thing which is both lawful and possible (Commercial Coal Co. v. Big Bend Coal Co., 293 Pa. 39, 42) ; and where performance becomes difficult or impossible by reason of something occurring subsequent to the contract, the promisor is not thereby discharged if it appears that the thing to be done is lawful and possible in itself, inasmuch as it is his duty, if he wishes to be excused from performance in event of such contingency arising, to provide for that situation in his contract. Contingencies not provided against will not ordinarily excuse performance: Swarthmore Borough v. Phila. Rapid Transit Co., 280 Pa. 79, 84. In Myers v. Drake, 10 Watts 110, this court said: "A contract to perform an impossible thing may be void; but it never is impossible to procure and deliver an article of commerce which may be had in the market in some quarter of the world."

Both parties to the contract realized the uncertainty of the labor situation and the possibility of difficulties arising when union and nonunion men were expected to work on the same building. They, in fact, discussed the matter and plaintiffs' position as employers of nonunion men was made clear. Their bid was given with the understanding that they operated an open shop, and even though they stated at the time the contract was signed that they had worked on union jobs with nonunion men and had no difficulty, such statement cannot be construed as a guarantee on their part that they assumed responsibility of labor difficulties arising under the contract in question. Defendants were fully informed of all the circumstances and agreed to omit the clause requiring the employment of union workmen. Having failed to provide against the very contingency which both parties were aware might occur, the happening of such contingency cannot be set up as an excuse for fail-

ure to perform. Furthermore there is no such impossibility of performance as is required within the rules governing such defense. There was no evidence to show inability to complete the work without the aid of union men or even to show that it would have been impossible to complete it with union labor working with nonunion employees. There was at most a threat by members or officials of the union to call a strike if plaintiffs were permitted to begin work on the building. Whether this threat would have been carried out is an open question.

The judgment is affirmed.