Luria Engineering Company *v.* Aetna Casualty and Surety Company et al., Appellants.

Argued June 18, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Arthur Silverblatt*, with him *James B. McGiffert*, and *James, Harris, Silverblatt & Townend*, and *Fackenthal, Teel & McGiffert*, for appellants.

*Edward J. Danser*, with him *Danser, Brose & Poswistilo*, for appellee.

Opinion by Jacobs, J., September 16, 1965:

The Northampton Area Joint School Authority, in early 1958, entered into contracts for the erection of a high school building. The general contract was awarded to Luria Engineering Company, appellee herein, and hereinafter referred to as "Luria". The heating contract was given to John F. Miles. The plumbing contract was given to George F. DeLallo, and the electrical contract was given to William A. Donmoyer Company. On April 1, 1958, Luria entered into a written subcontract with the appellant, General Roofing & Insulation Co., Inc., hereinafter referred to as "General Roofing", by the terms of which General Roofing was to erect the roof on the new high school building for the sum of $30,914.00. On April 22, 1958, the other appellant, The AEtna Casualty and Surety Company, hereinafter referred to as "AEtna", executed a performance bond on behalf of General Roofing in the amount of $30,914.00.

On September 3, 1958, work on the high school ceased as a result of a labor dispute stemming from the fact that Donmoyer employed nonunion labor. The site was picketed and Luria's employees, as well as all the other union members on the job, refused to cross the picket line. At the time work stopped General Roofing had not commenced to perform any of the work called for in its contract, nor had Luria's work progressed to the point where it would have been possible to place the roof on the building. Work on the high school did not resume until September 10, 1959, after an injunction was granted.

In May, 1959, General Roofing wrote a letter to Luria stating that the material and labor costs on which its contract was based had increased by $6,600.-00 since the date of the contract and asked that its contract price be increased by this amount or, if that was not possible, that it be released from its contract because of the delay. Apparently this letter was not answered but in June, 1959, representatives of Luria and General Roofing discussed the possibility of buying back General Roofing's contract. No decision was made. On October 1, 1959, Luria directed General Roofing to have its superintendent on the job site on October 2, 1959, and to be ready to commence work on October 5, 1959. General Roofing did not respond affirmatively and on October 5, 1959, Luria notified General Roofing that unless General Roofing had workmen on the job site within forty-eight hours Luria would engage another contractor to perform the work and would give notice to General Roofing's bonding company. General Roofing then replied, on October 6th, that it would proceed with the contract if Luria would agree to pay its advances in costs either as claimed by it or to be determined by some method such as arbitration; otherwise it would consider the agreement discharged. On October 7, 1959, Luria notified AEtna that General

Roofing was in default. On October 22, 1959, Luria entered into a written subcontract with another roofing company which agreed for $36,875.00 to perform the work which General Roofing had agreed to perform.

This suit was brought by Luria to recover the difference between the contract price agreed to by General Roofing and the price paid to the subsequent roofing contractor, which difference has been stipulated to be $5,961.00. Suit was originally started against AEtna which joined General Roofing as additional defendant and it was stipulated that General Roofing is liable over to AEtna on the cause of action if AEtna is liable to the plaintiff. The case was tried before Judge CLINTON BUDD PALMER of the Court of Common Pleas of Northampton County without a jury. Judge PALMER entered a verdict in favor of the plaintiff in the amount of $5,961.00. Exceptions were filed to the trial judge's findings of fact and conclusions of law all of which were dismissed by the court en banc except one requesting that interest be given on the verdict. An order was entered by the court en banc sustaining the verdict of the trial judge sitting without a jury and directing that judgment be entered in favor of the plaintiff and against both defendants in the sum of $5,961.00 together with interest thereon at the rate of 6% from October 22, 1959. It is from that judgment that an appeal has been taken to this court.

First we note that nothing in the contract between General Roofing and Luria excuses General Roofing's refusal to perform. Section 3 of the contract provided that the subcontractor "agrees to begin said work within five (5) days after he is notified to do so and to carry it forward and complete it as directed." No conditions appear in the contract limiting General Roofing's obligation to any particular time or fixing a starting date. Although reference is made in the

subcontract to the contract between Luria and the Authority apparently that contract contained no provisions which would have limited or fixed the time within which General Roofing must carry out its obligation because neither party cites any provision of that contract nor was it admitted in evidence so as to be available to this court. Therefore, if General Roofing is to be relieved of its unconditional obligation it must be under some applicable rule of law.

The condition causing the delay in General Roofing's opportunity to perform its contract was caused by the actions of third parties occurring subsequent to the execution of the contract. There was no fault on the part of Luria which might have excused General Roofing even under the old common law rule that the contract must be performed unless its performance was rendered impossible by an act of God, the law or the other party. Under that rule it was held that the contracting party must provide in his contract against all other eventualities. See *Murphy v. Liberty National Bank*, 184 Pa. 208, 39 A. 143 (1898), and *Miller v. Homeopathic Hospital*, 243 Pa. 502, 90 A. 394 (1914).

We believe the present rule in Pennsylvania to be that acts of a third party making performance impossible or causing a delay resulting in substantial increase in expense to the contracting party do not excuse failure to perform if such acts were foreseeable because it was the duty of the contracting party to provide for that situation in his contract. That is the holding of *Moore v. Whitty*, 299 Pa. 58, 149 A. 93 (1930). In that case a subcontractor sued a general contractor for breach of contract because the contractor refused to let the subcontractor proceed with his subcontract. The subcontractor employed nonunion labor and the labor union threatened to call a strike if the subcontractor was permitted to proceed with his work.

The contractor yielded to the demands of the union and refused to permit the subcontractor to proceed with his contract. The contractor claimed that the attitude on the part of the labor union rendered performance impossible and relieved the contractor from liability for violation of the contract. The court in its opinion affirming judgment for the plaintiff stated, inter alia, at p. 62: "The general rule is that mere inconvenience, though it works a hardship on a party, does not excuse him from the performance of an absolute and unqualified undertaking to do a thing which is both lawful and possible (Commercial Coal Co. v. Big Bend Coal Co., 293 Pa. 39, 42) ; and where performance becomes difficult or impossible by reason of something occurring subsequent to the contract, the promisor is not thereby discharged if it appears that the thing to be done is lawful and possible in itself, inasmuch as it is his duty, if he wishes to be excused from performance in the event of such contingency arising, to provide for that situation in his contract. . . .

"Both parties to the contract realized the uncertainty of the labor situation and the possibility of difficulties arising when union and nonunion men were expected to work on the same building. . . . Having failed to provide against the very contingency which both parties were aware might occur, the happening of such contingency cannot be set up as an excuse for failure to perform." The general rule is reiterated in *Wissahickon Realty Corporation v. Boyle*, 385 Pa. 198, 122 A. 2d 720 (1956).

While the word "foreseeability" does not appear in the *Moore* case, it is clear that the rationale of the decision is that a contingency, if foreseeable, must be covered by the contract or the happening of the same will not excuse nonperformance. Foreseeability was also the test in *Acchione v. Commonwealth*, 347 Pa. 562, 32 A. 2d 764 (1943), where a party to a highway

construction contract could not recover damages resulting from delay caused by third parties and events when he had knowledge of pre-existing conditions under the immediate control of third persons which might delay the performance of the work.

In today's union-conscious society, in a job involving the construction of a building of some magnitude, a labor dispute or strike is certainly foreseeable. Especially is this true where, as in our situation, there were at least five different contractors, one of whom employed nonunion labor. Furthermore the parties themselves foresaw the possibility of a strike and provided in Section 8 of the contract for a manner of dealing with claims resulting from "any *damage* which may be caused by strike, fire, flood . . ." (emphasis added). The only relevance of this section of the contract is that here the parties indicated that the possibility of a strike was foreseeable, but they failed to provide that a strike or a delay caused by strike should excuse performance.

Our holding is not inconsistent with the Restatement of the Law of Contracts. Appellants argue that under Section 462 of the Restatement General Roofing's duty to perform was discharged on the basis that the labor dispute created a temporary impossibility which imposed a substantial burden on General Roofing. The argument fails because the alleged "temporary impossibility" here was a "supervening impossibility" within the meaning of Section 457 of the Restatement and is qualified by Section 457. Under Section 457, the duty of the promisor is discharged if he "had no reason to anticipate" the occurrence making performance impossible. Since we have determined that a labor dispute was foreseeable, General Roofing was not discharged of its duty to perform.

Judgment affirmed.