457 A.2d 1269

**INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS, LOCAL 1201, AFL–CIO, Appellant,**

v.

**The BOARD OF EDUCATION OF the SCHOOL DISTRICT OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 1983.

Decided March 31, 1983.

476

Miriam L. Gafni, Freedman & Lorry, P.C., Philadelphia, for appellant.

Vincent Salandria, The Philadelphia School Dist., Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, The International Brotherhood of Firemen & Oilers, Local 1201, AFL–CIO (hereafter "Union"), is the

collective bargaining representative of certain employees of appellee, The Board of Education of the School District of Philadelphia (hereafter "District"). Pursuant to the *Public Employee Relations Act,* Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101 et seq. (hereafter "Act 195"), the Union called a three-day strike against the District in February, 1981. The strike ended with the signing of a collective bargaining agreement covering the period from September 1, 1980 to August 31, 1982. The agreement provided that there would be no salary increase for the first year. There would be a four (4%) percent lump sum bonus for the period of January 1 to August 31, 1981, payable on September 1, 1981. The bonus would be incorporated into the salary schedule, and an additional ten (10%) percent increase would be given for the second year of the agreement. The District would make increased payments for health, welfare and pre-paid legal services during the second year.

In March, 1981, after approving the collective bargaining agreement, the District prepared a proposed budget for the 1981–82 school year. The budget reflected $750,207,000.00 in revenues and $902,700,000.00 in net obligations. There was a fund deficit of $71,073,000.00 in addition to the excess of net obligations over revenues reflected in the proposed budget.[1] In May, 1981, the District adopted a revised budget reflecting $761,024,148.00 in revenues; $701,005,148.00 in net obligations; and a $60,019,000.00 fund deficit. The District cut its budget by, inter alia, refusing to pay the salary and benefit increases it agreed to for the second year of the collective bargaining agreement with the Union.

Pursuant to the agreement, the Union filed a grievance over the refusal to pay the salary and benefit increases. The grievance was heard by an arbitrator. The District argued that it was excused from paying the increases on the basis of impossibility of performance in that it did not have and could not obtain sufficient funds and that the availability of funds was a condition precedent to performance. The arbitrator determined that the District had not established

1. The fund deficit reflected a shortage of funds for the previous year.

impossibility of performance and ordered it to pay the increases. The District filed a Petition for Review in the Court of Common Pleas of Philadelphia. The court dismissed the Petition and confirmed the arbitration award. The Commonwealth Court reversed, holding that the availability of sufficient funds was a condition precedent to the agreement and that the burden was on the Union to establish the occurrence of such condition. It ordered the case remanded to give the Union an opportunity to establish the occurrence of the condition precedent. We granted the Union's Petition for Allowance of Appeal. The issues on appeal are whether there is impossibility of performance, whether there is a condition precedent and, if so, whether the Union has the burden to establish it, whether the arbitration award must be upheld as being rationally derivable from the collective bargaining agreement, and whether the award is consistent with law and public policy.

We will first consider the claim of impossibility of performance. The District bases the claim on an inability to obtain sufficient funds. The District operates under a home-rule charter adopted under the *First Class City Public Education Home Rule Act,* Act of August 9, 1963, P.L. 643, 53 P.S. § 13201 et seq. The charter requires a balanced budget, § 12–303(a). It also provides that school board members are appointed by the mayor, § 12–1201. Under Article 3, § 31 of the Constitution of the Commonwealth, "the General Assembly shall not delegate to any special commission . . . any power . . . to levy taxes . . ." This provision prevents an appointed body such as the Philadelphia School Board from being empowered to levy taxes. *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979). The District is therefore dependent on funds appropriated by the Philadelphia City Council.[2] It contends that its dependence

---

2. The Court of Common Pleas noted that the Mayor and other officials of the city administration participated in the contract negotiations in an advisory capacity. They discussed, inter alia, funding possibilities. The court further noted that the District requested a higher appropriation and concomittant tax levies for the year in question, but the city council refused the request. We find that the

on funds so appropriated and its inability to incur a deficit renders performance of the contract impossible. The arbitrator rejected the claim on the basis that the refusal to honor the contract was based on the District's unilateral decision as to how to balance its budget without a showing that it had tried to honor the contract by all possible means.

■ We accept the arbitrator's finding that impossibility of performance was not established. In *Moore v. Whitty,* 299 Pa. 58, 149 A. 83 (1930), this Court held that a strike or the threat thereof did not excuse a building contractor from performing on a contract. It was found that mere inconvenience, although it works a hardship, does not excuse performance and that a party who wishes to be excused from performance on the basis of a subsequently occurring condition has a duty so to provide in the contract and will not be excused otherwise if performance is lawful and possible in itself. *Luria Engineering Co. v. Aetna Casualty & Surety Co.,* 206 Pa.Super. 333, 213 A.2d 151 (1965), was another case where a labor dispute was found not to excuse performance of a contract. The court held that an act of a third party that makes performance of a contract impossible will not excuse performance if it is foreseeable and not provided for in the contract. In the instant case, we find that the District was required to establish impossibility of performance and failed to do so in the absence of a showing that it attempted performance by all possible means. Furthermore, there is nothing in the agreement stating that a balanced budget or any particular level of funding is a condition precedent to the payment of the agreed on salary and benefit increases. We find that the District had a duty to make such provision in the agreement if it wished to be excused. In *Danson v. Casey,* supra, we took note of the fact that the Philadelphia School District has had a history of funding difficulties. We find that the District's financial condition was foreseeable and did not excuse performance

City Council knew or should have known of the contractually mandated salary and benefit increases, as they were agreed to during the previous year and city officials participated in the negotiations.

on the basis of action of a third party, i.e. failure of the city council to appropriate sufficient funds or any other basis.

Our finding that the District's financial condition does not excuse performance is further supported by cases dealing specifically with labor relations. The award of an arbitrator in a labor dispute is not improper on the basis of its fiscal impact when the legislative body charged with appropriating the necessary funds has not rejected the award, *Board of Education of the School District of Philadelphia v. American Federation of State, County & Municipal Employees, Local 1660, District Council 33, AFL–CIO*, 66 Pa.Cmwlth. 346, 444 A.2d 813 (1982). Here the City Council appropriated funds for the District to allocate as it saw fit and did not reject the arbitration award.

In the instant case, the matters in question are proper terms and conditions of employment. Wages are specifically made subject to collective bargaining by Act 195, § 701, 43 P.S. § 1101.701. Fringe benefits are also a proper subject of collective bargaining, *Costigan v. Philadelphia Finance Department Employees, Local 696, American Federation of State, County, and Municipal Employees, AFL–CIO*, 462 Pa. 425, 341 A.2d 456 (1975). The parties have not cited and we have not found any applicable statutory or home rule charter provision that prohibits the salary and benefit increases provided for in the collective bargaining agreement and enforced by the arbitration award. The finding of impossibility of performance would, under the circumstances here announced, be improper without a showing of the capabilities or lack of the same to implement the award. While the Court is cognizant of the potential difficulties that may occur when one body negotiates a contract and another is required to act to guarantee its implementation, the solution lies in bargaining or with legislative enactment and not with decision-making.

Our acceptance of the arbitration award is required, given the applicable standard of review. An arbitration award based on an interpretation of a collective bargaining

agreement must be accepted by the courts if the interpretation can in any rational way be derived from the agreement, viewed in light of its language and context and any other indicia of the parties' intent, *Ringgold Area School District v. Ringgold Education Association, PSEA/NEA,* 489 Pa. 380, 414 A.2d 118 (1980). In light of our discussion supra, we find that the arbitrator's interpretation that the district agreed to pay the disputed salary and benefit increases without any condition precedent based on its financial condition was rationally derivable from the agreement and must be accepted.

■ Finally, we find that the arbitration is proper under the law and public policy. As we have noted, the matters in dispute are proper subject of collective bargaining. The provisions of the agreement enforced by the arbitrator do not violate any applicable law. Act 195, § 101, 43 P.S. § 1101.101 declares that it is the public policy of the Commonwealth to "promote orderly and constructive relationships between all public employers and their employes ... by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large." Our decisions requiring public employers to do all in their power to implement a lawful award or contract and establishing a narrow scope of review for arbitration awards reflect a public policy. This policy favors the resolution of disputes by bargaining and arbitration where appropriate, as here, and the acceptance by the courts of the results thereof. Our upholding of the arbitration award in the instant case is in accord with public policy.

The Order of the Commonwealth Court is reversed and the Order of the Court of Common Pleas is reinstated.