633 A.2d 181

**Lawrence OELSCHLEGEL, Jr., Appellant,**

v.

**MUTUAL REAL ESTATE INVESTMENT TRUST.**

Superior Court of Pennsylvania.

Argued April 4, 1993.

Filed Nov. 4, 1993.

Richard S. Watt, Haverford, for appellant.

Stanton C. Kelton, III, Cornwells Heights, for appellee.

Before CAVANAUGH, BECK and JOHNSON, JJ.

BECK, Judge.

In this contract dispute, appellant Lawrence Oelschlegel, Jr., appeals from the verdict and judgment entered in favor of appellee Mutual Real Estate Investment Trust ("MREIT"). We affirm in part and reverse in part.

On November 8, 1984, the parties entered into a written contract for the reconstruction of an apartment building owned by appellee MREIT, which had been damaged by fire. MREIT paid Oelschlegel all but one installment of the total cost of reconstruction, and the parties agreed that the balance remaining on the contract at the time of trial was $46,739.97. According to the contract, MREIT was to pay the final installment upon Oelschlegel's "satisfactory completion" of the contracted work.

Appellant Oelschlegel claimed to have completed performance on April 1, 1985. However, less than one year after appellant finished, Middletown Township condemned the building because of structural defects and ordered the building vacated. The building remained vacant for three years.

MREIT eventually spent over $70,000 to repair and rebuild the building.

Appellant Oelschlegel brought this action to recover the balance left unpaid by MREIT on the 1984 reconstruction contract. MREIT filed a counterclaim for its repair costs and lost profits. After a bench trial, the Honorable Edward G. Biester, Jr. held in favor of MREIT on Oelschlegel's claim for payment. In addition, Judge Biester awarded MREIT $80,-000 in damages on its counterclaim.[1] Oelschlegel filed a motion for post trial relief, which was denied. This timely appeal followed.

On appeal, appellant Oelschlegel raises the following issues:

1. Whether the Court below erred in allowing the testimony of a defense expert who was not identified as such prior to trial.

2. Whether the Court below failed to take into account the amount remaining due Mr. Oelschlegel under the contract in rendering its verdict in favor of MREIT.

3. Whether the Court below erred in considering defense testimony concerning alleged rental income loss which was based on industry operating expense averages.

4. Whether the verdict of the Court below was against the weight of the evidence.

5. Whether the verdict of the Court below in favor of Defendant below was excessive.

We find that the trial court's disposition of issues 1, 3, 4 and 5 was correct. However, we must remand for recalculation of damages in light of the amount remaining unpaid by MREIT.

■ Appellant first argues that the trial court should have barred defense expert Joseph C. Harkins from testifying because he was identified only two weeks prior to trial, and was not specifically listed as an "opinion witness." MREIT's description of Harkins on a witness list stated: "See report. He will testify as to the negligence of Mr. Oelschlegel and also

---

1. This amount was increased on MREIT's post trial motion to $90,-388.88 to reflect the correct amount of rental income loss.

as to the cost and necessity of repairing damages." Appellant asserts that this notification was inadequate under the applicable discovery rules, and that Harkins's expert testimony should have been precluded. *See* Pa.R.Civ.P. 4003.5 and 4019(i).

Even if this notice were technically deficient, as appellant argues, we may overlook procedural errors where there was no bad faith, where there was substantial compliance with the rule's requirements, and where there was no prejudice or surprise. *See Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270, 1272 (1986); *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 521 A.2d 451 (1987). The trial judge here concluded that MREIT had not acted in bad faith, and that no prejudice had resulted. MREIT did notify Oelschlegel that Harkins would testify as to Oelschlegel's "negligence," and this indicates that Harkins would express an "opinion." In addition, the trial court afforded appellant an opportunity to cure any prejudice which might have resulted from the alleged late disclosure by allowing appellant to interview Harkins prior to his testimony regarding his qualifications and any reports he had prepared. Appellee apparently found this opportunity adequate as he did not request a continuance, and since he did not object at trial to the court's receiving Harkins as an expert witness. We find no error in the trial court's ruling.

Appellant next contends that the trial court erred in allowing Ted W. Smith to testify as to appellee's rental income loss through the use of an industry accepted operating expense factor. The trial court properly refused to entertain this claim of error as appellant never objected at trial to Smith's testimony. Appellant obviously is precluded from raising this issue on appeal.

■ Appellant next argues that the trial court's verdict in favor of MREIT was against the weight of the evidence. This argument is meritless. Oelschlegel testified that he completed the reconstruction of the building on or about April 1, 1985. However, on March 13, 1986, less than one year later, the

building was condemned due to structural defects, and MREIT was ordered to vacate the building until corrective measures could be undertaken. The building required extensive reconstruction before it could again be deemed habitable. MREIT's expert testified to the following repairs which were required and performed: removal and replacement of all plywood and gypcrete, apartment doors, kitchen cabinets on walls, carpeting, toilets, appliances, heaters, duct work, and plumbing. There also was evidence that appellant disregarded instructions and building specifications. The trial judge thoroughly discussed in his opinion the evidence he relied upon in rendering his verdict, and we find no error or abuse in his factual determinations.

Appellant next argues that the trial court's verdict was excessive. This argument also must fail. A new trial will be granted on the basis that a verdict is excessive "only when the verdict is so contrary to the weight of the evidence that it shocks one's sense of justice and makes a new trial imperative ..." *Douglass v. Licciardi Construction Co.*, 386 Pa.Super. 292, 562 A.2d 913, 916 (1989). Our review of the record indicates that MREIT's award included the cost of repair and lost rental profits, the amounts of which were amply supported by the evidence at trial. We therefore find no error in the trial court's conclusion that the verdict was not excessive.

However, we hold that the trial court erred in failing to consider the amount remaining unpaid under the contract in calculating damages. The trial court considered only the cost of completing the work by another contractor, plus lost rental profits. We hold that the better measure of damages in this case is the *cost of completing the contract minus the unpaid part of the contract* (plus any lost profits). By failing to use this more precise method of calculation, the trial court created a windfall of approximately $46,000 for the non-breaching party.

The central principle of the law regarding contractual damages is that the non-breaching party should be placed in the position he or she would have been in absent breach. The

lower court calculated the damages for the appellant's incomplete performance by measuring the cost of completion by another contractor who was called in to finish the job. Although this mode of measurement may be valid where the original, breaching contractor substantially has finished the work, or where the owner has completed payment to the breaching contractor, this case calls for a different method of calculation. We hold that the correct measure of damages in the case *sub judice* is as follows:

> [T]he measure of an owner's damages for a construction contractor's breach is the cost of completing the contract or correcting the defective work, minus the unpaid part of the contract price.

Annotation, Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Right Measure of Damages for a Construction Contract, 41 A.L.R.4th 131 § 15 (1985). *See Brourman v. Bova*, 198 Pa.Super. 279, 182 A.2d 245 (1962).[2]

The Restatement (Second) of Contracts § 348 provides a useful illustration of the application of this method of calculation:

> A contracts to build a house for B for $100,000 but repudiates the contract after doing part of the work and having been paid $40,000. Other builders will charge B $80,000 to finish the house. B's damages include the $80,000 cost to complete the house less the $60,000 cost avoided or $20,000, together with damages for any loss caused by the delay.

2. Admittedly, our cases seem to declare that the proper method of calculating damages for incomplete or defective performance is to use the cost of completing work or correcting defects by another contractor. *Douglass v. Licciardi Construction Co.*, 386 Pa.Super. 292, 297, 562 A.2d 913, 916 (1989); *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 134, 519 A.2d 1021, 1029 (1987). However, in neither of these cases is there an indication that an amount remained unpaid on the construction contract at issue, as there is here. In *Brourman v. Bova, supra*, which did involve an unpaid balance on the breached contract, this court recognized that the unpaid amount must be subtracted from the cost of completion in order to award damages to the non-breaching party.

Restatement (Second) of Contracts § 348, illus. 3. Of course, the non-breaching party is entitled to lost profits that are caused by the breach.

Our objection to the trial court's method of calculation is that it ignores the cost avoided—the amount that the non-breaching party would have had to pay for the breaching party to finish the contract. In this case, Oelschlegel contracted to do repairs on MREIT's building, and when Oelschlegel breached the contract there was $46,739.92 remaining unpaid. This sum is MREIT's cost avoided. This figure should be subtracted from the $71,548.00 MREIT was charged by another contractor to finish the job. Otherwise, instead of placing the non-breaching party in the position it would be in absent breach, the contract breach actually would benefit MREIT by $46,739.92. Therefore we reverse this portion of the trial court's order and remand for a recalculation of damages to account for MREIT's cost avoided.

Affirmed in part and reversed in part, and remanded for a recalculation of damages consistent with the foregoing principles. Jurisdiction relinquished.