J-A14031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERICSSON PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BULLE CONSTRUCTION, LLC | : | |
| | : | |
| Appellant | : | No. 1516 EDA 2021 |

Appeal from the Judgment Entered August 31, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 0809 Oct. Term 2017

BEFORE: PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JANUARY 10, 2025**

Bulle Construction, LLC ("Bulle") appeals from the judgment entered against it and in favor of Ericsson Properties, LLC ("Ericsson") following a non-jury trial. We affirm in part, vacate in part, and remand for the trial court to recalculate damages consistent with this decision.

This appeal arises out of a poorly drafted construction contract to renovate a building in Philadelphia ("the property") and the delays and disputes that led to Ericsson, the owner of the property, to declare a breach and terminate Bulle, the general contractor. Ericsson and Bulle each asserted the other breached the contract and their duties of good faith and fair dealing. Ericsson sought to recover the costs to renovate the property after terminating Bulle ("Ericsson's costs"). Bulle sought to recover the outstanding balance Ericsson owed under the contract, the costs of the extra, or "add-on," work Bulle performed, as well as interest, attorney's fees, and other penalties under

the Contractor and Subcontractor Payment Act ("CASPA").[1]  A more detailed

summary of the factual and procedural history of this matter follows.

In October 2017, Ericsson hired Bulle to renovate the property to include

a first-floor commercial space, two upstairs apartments, a brick front exterior,

and a stucco rear exterior.  ***See*** N.T., 5/19/21, at 156-75; N.T., 5/18/21, at

97.  Ericsson submitted plans from its architect, YCH Architect LLC ("YCH"),

and Bulle drafted the renovation contract, which the parties executed.  ***See***

Final Estimate, signed 10/26/17, unnumbered at 1-9 (hereinafter "the

renovation contract") (admitted as Exhibit P-9 at trial); N.T., 5/19/21, at 156-

75.

The renovation contract set forth a twenty-one-to-twenty-four-week

schedule to complete the project.  ***See*** Renovation Contract at 8 (outlining the

work schedule).  However, the renovation contract stated that Bulle was not

responsible for delays in inspections by the Philadelphia Department of

---

[1] ***See*** 73 P.S. §§ 501-517.  The purpose of CASPA is to protect contractors and subcontractors and encourage fair dealing among parties to a construction contract.  ***See El-Gharbaoui v. Ajayi***, 260 A.3d 944, 954 (Pa. Super. 2021). "Performance by either a contractor or subcontractor pursuant to a contract entitles [it] to payment from the party with whom [it] contracted." ***Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC***, 106 A.3d 103, 109 (Pa. Super. 2014) (internal citation omitted).  CASPA "provides rules and deadlines to ensure prompt payments under construction contracts, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages." ***Id***.  (internal citations and quotations omitted).

Licenses and Inspections ("L&I"). ***See id***. at 5 (stating, verbatim: "On Schedule Time Tables . . . In Accordance With [L&I]. Will not be held Accountable for lapses in the city inspectors time tables. if inspector is delayed").

The renovation contract had a total contract price of $226,000 to be paid by Ericsson over four draws: $75,333, payable in October 2017, to cover fencing, demolition, masonry, roofing, framing, and electrical; $75,333, payable in December 2017, to cover plumbing, HVAC, sprinkler, and fire suppression systems; $48,967, payable in January 2018, to cover drywall, painting, kitchen, tile and flooring, and appliances; and a final payment of $26,367 due upon completion. ***See id***. at 1-9. The renovation contract provided allowances to complete specific items; as to add-on work, the renovation contracts stated that Bulle would discuss with Ericsson "add-ons . . . for resolution" and charge "[a]ny action taken on discussed items to the completion balance." ***Id***. at 1-5, 9. Ericsson was responsible for the costs of permits. ***See id***. at 1 (stating, verbatim: "Permits . . . (owner will pay for the cost of Building Permit . . .)"). The renovation contract did not specify when Ericsson had to pay for permits, address delays in L&I's permitting process caused by third-parties, or allow Bulle to accelerate payments for add-ons.

During the renovation, Bulle applied and paid for permits with L&I. ***See*** N.T, 5/19/21, at 189; N.T., 5/18/21, at 57, 114, 118, 126. Between October 2017 and January 2018, Bulle completed demolition and began working on the exterior masonry, roof, basement, windows, framing, and rough-ins. ***See***

N.T., 5/18/21, at 53, 56, 59. Bulle performed add-on work and encountered unforeseen expenses including: having an engineer assess a beam which had been damaged during a prior fire that Ericsson had not disclosed to Bulle ("the fire-damaged beam"); waterproofing the basement; installing a storm drain in the rear yard; developing plans to add a beam to support the front exterior brick work and then changing the front exterior to brick veneer; installing new sub-flooring for the upstairs apartments; and levelling a stairway. **See** Production Report, dated 1/8/18, unnumbered at 1-2 (admitted at trial as Exhibit D-20); Cost Summary and Completion Funding, dated 9/18/18, unnumbered at 2 (admitted at trial as Exhibit D-31); **see also** N.T., 5/19/21, at 182-202. Bulle requested the first two draws, which Ericsson paid in full and on time. **See** N.T., 5/18/21, at 125; **see also id**. at 22.

Bulle also applied for a mechanical permit, but beginning in January 2018, L&I rejected plans prepared by YCH, Ericsson's architect. **See** Production Report, dated 1/8/18, unnumbered at 2. Between January and July 2018, L&I demanded additional information and revisions to the plans, as well as statements by an engineer ("the permitting delay"), and Bulle communicated with YCH to resolve those issues. **See** N.T., 5/19/21, at 202-13; N.T., 5/18/21, at 133-42. Bulle stopped work in February or March 2018 ("the work stoppage"), and emailed Ericsson about the difficulties working with YCH and asserting that work had to stop until the mechanical permit issued. **See** N.T., 5/19/21, at 202-13; N.T. 5/18/21, at 133-42. In March 2018, Ericsson made a late payment of $37,667 toward the third draw. **See**

N.T., 5/18/21, at 22, 66-67[2]  L&I approved the mechanical permit in July 2018, but Bulle waited for four weeks to pick up and pay for the permit.  **See** N.T., 5/19/21, at 213-16.

In September 2018, Bulle sent Ericsson a document summarizing its costs and requesting completion funding.  **See** Cost Summary and Completion Funding, unnumbered at 1-3.  Bulle represented that it spent $32,240 for add-ons, unforeseen expenses, and all permits and estimated the renovation would require an additional $98,700 and twelve to sixteen more weeks to complete. **See id**. at 2-3; **see also** N.T., 5/19/21, at 229-33.   Shortly thereafter, Ericsson sent Bulle a cease-and-desist letter effectively terminating the renovation contract.  **See** N.T., 5/19/21, at 234.   Ericsson ultimately hired new contractors and paid them approximately $169,000 to renovate the property.  **See** N.T., 5/18/21, at 79.

Ericsson commenced the underlying action against Bulle in October 2018, asserting breach of contract, negligence, and other claims.   Bulle

---

[2] Bulle asserts that the March 2018 payment by Ericsson was a late and partial payment toward the third draw.  **See** Bulle's Brief at 10; N.T., 5/18/21, at 22. However, the trial court found that Ericsson paid the first three draws pursuant to the renovation contract.  **See** Trial Court Opinion, 3/31/22, at 1 n.1.  It appears that Ericsson's payment of the third draw was late; however, there is some indication in the record that Bulle requested a payment of $37,667, rather than the $48,967 due under the renovation contract.  **Compare** Production Report, dated 12/19/17, unnumbered at 1 (requesting a payment of $37,667 by January 2018) (admitted at trial as Exhibit D-16); **with** Renovation Contract at 7 (stating that the third draw was for $48,967, due in January 2018).  Neither the parties nor the trial court offered any explanation for the discrepancy between the amount owed pursuant under the renovation contract and the amount requested by Bulle.

answered and counterclaimed for breach of contract, unjust enrichment, negligent misrepresentation, fraudulent misrepresentation, and violations of CASPA. During discovery, a motions court granted Bulle a protective order concerning information about its bank accounts. *See* Order, 1/2/20, at 1. Bulle subsequently filed a motion *in limine* to exclude evidence concerning its construction costs during the renovation and argued that the motion court's decision constituted the law of the case as to the relevance of a contractor's costs in a breach of contract action. *See* Motion *in Limine*, 11/6/20, at 1-3; N.T., 5/17/21, at 7-14. The trial court denied the motion *in limine*. *See* N.T., 5/17/21, at 15; Order, dated 5/17/21, at 1.

At the non-jury trial, Ericsson presented testimony from Eric Li ("Li"), one of Ericsson's two principals;[3] Alex Rong ("Rong"), a structural engineer whose employees inspected the property after Ericsson terminated the renovation contract; Gustavo Olviero ("Olviero"), whom Ericsson hired to work on the front exterior of the property; and Ming Yi Wu ("Wu"), whom Ericsson hired to work on the remainder of the property. Bulle presented testimony from George Bulle ("George Bulle"), Bulle's principal, and Francesco DiCianni ("DiCianni"), an expert witness who reviewed Ericsson's and Bulle's claims for damages. A summary of the trial testimony follows.

Li, Ericsson's principal, testified that Bulle took responsibility for obtaining all permits, and although he knew Ericsson was responsible for

_____

[3] Ericsson's other principal was Li's wife Selina Zhao, who did not testify at trial.

paying for the permits, he thought the costs of the permits would be paid out of the initial budget. *See* N.T., 5/18/21, at 127-28, 136. By December 2017 or January 2018, Bulle had completed demolition and started other work at the property. *See id*. at 53-60. Li paid the first two draws in full, as well as $37,667 for the third draw, and by March 2018, Ericsson had paid Bulle $188,133 toward the renovation contract. *See id*. at 22, 45, 57, 118, 125.

Li testified that the work stoppage started in February or March 2018 because of the permitting delay. *See id*. at 61, 63. Li also stated that George Bulle, Bulle's principal, informed him that Bulle had run out of money. *See id*. at 64-67. Li testified that he advanced Bulle funds for windows and other materials in June or July 2018, but Bulle did not resume work. *See id*. In September 2018, when Bulle asked for the additional funds to complete the renovation, Li terminated the renovation contract because he "kept paying [George Bulle] money and he never [did] the work." *See id*. at 65. Li further stated that Ericsson's prior payments should have covered materials and work for which Bulle sought additional funding. *See id*. at 67, 75.

Additionally, Li testified that the work Bulle had performed was either incomplete or faulty. *See id*. at 71-73. Rong, the structural engineer whose company inspected the property in September 2018, did not identify current structural defects in Bulle's work but noted deficiencies that led to water infiltration, a flooded basement, a rotting wood beam, and mold. *See* N.T., 5/19/21, at 96, 102-11, 119.

After terminating the renovation contract, Li hired the new contractors—Olviero, who removed and redid the front exterior brick work in March 2019 for $18,157, and Wu, who worked on the other parts of the property. ***See*** N.T., 5/18/21, at 74-80, 172, 181-82. Wu testified that Ericsson paid him $65,000 for labor. ***See id***. at 194. Li testified that after terminating Bulle, Ericsson spent approximately $105,000 for materials. ***See id***. at 161-62.

Bulle presented evidence showing that it provided Ericsson with written updates on the progress of the renovation, the delays Bulle encountered, and the costs for add-ons Bulle requested. With respect to add-ons, George Bulle testified that when he verbally discussed proposed add-ons with Li, and Li told him to either "take care of it," which he regard as Ericsson's assent, or reminded him of the budget, which he regarded as a refusal. ***See*** N.T., 5/19/21, at 232-33.

As to the delays, George Bulle testified about a one-week delay in October 2017 caused by the discovery of the fire-damaged beam; problems in the original plan for the front exterior brick work and a change to brick veneer; the permitting delay between January and July 2018; and the difficulties working with YCH, Ericsson's architect. ***See id***. at 181-86, 191-96, 201-13. George Bulle noted that Bulle was a general contractor, not an architect or engineer, and he asserted that YCH, Ericsson's architect, and Ericsson were responsible for the permitting delay because they did not provide plans meeting L&I's requirements to approve the mechanical permit. ***See id***. at 202-13.

As to the work stoppage, George Bulle explained that Bulle needed the mechanical permit to "close up the walls[;]" there was no more work for Bulle to perform until the walls were closed; and his electrician had abandoned the project due to the lack of work. *See id*. at 220-27. George Bulle conceded that L&I approved the mechanical permit in July 2018, but he did not pick up the permit until August 2018 because of the payment dispute with Ericsson. *See id*. at 214-16.[4]

George Bulle acknowledged preparing and sending Ericsson the cost summary and completion funding document in September 2018. He explained that while he requested the additional $98,700 to complete the renovation, Bulle was ready, willing, and able to complete the renovation contract with or without the additional $98,700. *See id*. at 229-34, 255-57. Six days after he sent the cost summary and completion funding, Ericsson terminated the renovation contract without identifying any defective work or providing Bulle an opportunity to cure. *See id*. at 235. George Bulle stated that Bulle had completed or nearly completed several items in the renovation contract and

_____

[4] Upon questioning by the trial court, George Bulle noted that he did not need an electrician until after the walls were closed. *See* N.T., 5/19/21, at 221-27. George Bulle did not provide additional explanations for why all uncompleted work at the property had to stop before closing the walls, although he testified that the other alleged deficiencies in his work were minor defects that he could have easily repaired. *See id*. at 155-56 (indicating Rong's testimony about the absence of a waterspout, which Rong stated contributed to water infiltration at the property), 221-27 (indicating George Bulle's testimony that the absence of a waterspout was a minor defect that could be easily repaired).

the rough-ins of the remaining items were seventy-five percent complete. *See id*. at 219-31.

George Bulle further testified that the costs charged by Ericsson's new contractors were unreasonably high. *See id*. at 236-51. DiCianni, Bulle's expert, further opined that Ericsson's new contractors performed work beyond the scope of the renovation contract. *See id*. at 39-40. DiCianni concluded that only $62,498 of Ericsson's claimed costs clearly matched the scope of the renovation contract, a figure which he adjusted to $54,085 to account for allowances in the renovation contract. *See id*. at 39-40.[5]

The trial court found Ericsson's evidence more credible than Bulle's and ruled in Ericsson's favor on both Ericsson's breach of contract claim and Bulle's counterclaims. *See* Order, 5/27/21, unnumbered at 2. The court awarded Ericsson $144,489 for the cost of completing the renovation and correcting Bulle's deficient work. *See id*. Bulle filed post-trial motions seeking judgment *non obstante veredicto* ("JNOV") or a new trial, which the court denied.[6] Bulle

---

[5] Bulle also prepared tables calculating Bulle's damages on its counterclaims for breach of contract and violations of CASPA, *see* Damages Scenario, 5/14/21, at 1 (admitted as Exhibit D-39 at trial), but DiCianni did not testify as to his opinion concerning Bulle's damages.

[6] Bulle did not move for a compulsory non-suit or directed verdict on Ericsson's breach of contract claim, which can result in waiver of its assertion that the trial court erred in denying JNOV on that claim. *See Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 570 (Pa. Super. 2006). However, because the trial court did not find waiver on this basis and addressed the merits of this claim, we also decline to find waiver. *See Wag-Myr Woodlands*
*(Footnote Continued Next Page)*

- 10 -

appealed and subsequently praeciped for the entry of judgment. Bulle timely

complied with the court's order for a Pa.R.A.P. 1925(b) statement, but it filed

a statement raising forty-four errors complained of on appeal. The trial court

filed a Rule 1925(a) opinion.

Bulle raises the following issues for our review:

I. Whether the trial court erred or abused its discretion by finding for Ericsson on its breach of contract claim and applying the wrong measure of damages?

II. Whether the trial court erred or abused its discretion finding against Bulle on its counterclaim for breach of contract?

III. Whether the trial court erred or abused its discretion by finding against Bulle on its [CASPA] counterclaim?

IV. Whether the trial court erred or abused its discretion by denying Bulle's motion *in limine* and considering evidence of Bulle's construction costs?

Bulle's Brief at 4 (some capitalization omitted).

Bulle's first three issues implicate a challenge to the trial court's verdict

and denials of the requests for JNOV.[7] It is well settled that

[o]ur appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury.

*Homeowners Ass'n By Morgan v. Guiswite*, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018).

[7] Bulle, in its first three issues, does not seek a new trial.

- 11 -

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Associates, L.P.*, 181 A.3d 1188, 1191 (Pa. Super. 2018).

When considering claims that a party was entitled to JNOV, our standard of review is as follows:

> When reviewing a motion for JNOV[,] the evidence must be viewed in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact. Any conflict in the evidence must be resolved in the verdict winner's favor. JVOV may be entered: (1) where the moving party is entitled to judgment as a matter of law, or (2) where the evidence was such that no two reasonable minds could disagree that the outcome should have been in favor of the moving party.
>
> . . . [O]ur Court will reverse the trial court only upon a finding of an abuse of discretion or error of law that controlled the outcome of the case. Additionally, where credibility and the weight to be accorded the evidence are at issue, this Court will not substitute its judgment for that of the [factfinder].

*Francis v. LCP N. Third, LLC*, 293 A.3d 273, 279 (Pa. Super. 2023), *appeal denied*, --- A.3d ---, 193 EAL 2023, 2023 WL 8797687 (Pa. Dec. 20, 2023).

**Issues I and II**

We consider Bulle's first two issues together because they present overlapping claims concerning the trial court's determination that Bulle, not Ericsson, breached the renovation contract, the materiality of Bulle's breach, and the calculation and proper measure of damages.[8]

The following precepts govern our review. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the

---

[8] However, we address Bulle's arguments in a different order than stated in its brief.

existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." ***See Francis***, 293 A.3d at 279  (internal citation and quotations omitted).

With respect to the duty of good faith and fair dealing, courts recognize that

> [i]n the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

***Id***. (internal citation and indentation omitted).  The duty of good faith and fair dealing requires honesty in fact in the conduct or transaction concerned. ***See id***.  Examples of breaches of this duty include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance."  ***Id***. at 279-80 (internal citation and indentation omitted).

If proven, a breach of contract entitles the non-breaching party to damages.  "The central principle of the law regarding contractual damages is that the non-breaching party should be placed in the position he or she would have been in absent breach." ***See Oelschlegel v. Mut. Real Estate Inv. Tr.***, 633 A.2d 181, 184 (Pa. Super. 1993).  This Court has cited and applied the following measure of damages set forth in the Restatement (Second) of Contracts § 347:

> [T]he injured party has a right to damages based on his expectation interest as measured by
>
> > (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> >
> > (b) any other loss, including incidental or consequential loss, caused by the breach, less
> >
> > (c) any cost or other loss that he has avoided by not having to perform.

*Douglass v. Licciardi Const. Co., Inc.*, 562 A.2d 913, 915 (Pa. Super. 1989) (internal citation omitted); *accord Oelschlegel*, 633 A.2d at 184 (discussing Illustration 2 of Restatement (Second) of Contracts § 348). Our courts "have generally allowed damages for incomplete or defective performance of a building contract to be measured by the cost of completing the work or correcting the defects by another contractor." *Douglass*, 562 A.2d at 915-16 (internal citations omitted).

<u>Bulle's Breach of the Renovation Contract</u>

Bulle claims that the trial court erred or abused its discretion when finding it breached the renovation contract. *See* Bulle's Brief at 18-22.

"When performance of a duty under a contract is due, any nonperformance is a breach." *Seneca Res. Corp. v. S & T Bank*, 122 A.3d 374, 379 (Pa. Super. 2015) (internal citations and quotations omitted). Acts of a third party that cause a delay do not excuse failure to perform if such acts were foreseeable. *See Luria Eng'g Co. v. Aetna Cas. & Sur. Co.*, 213 A.2d 151, 153 (Pa. Super. 1965). Rather,

mere inconvenience, though it works a hardship on a party, does not excuse him from the performance of an absolute and unqualified undertaking to do a thing which is both lawful and possible; and, where performance becomes difficult or impossible by reason of something occurring subsequent to the contract, the promisor is not thereby discharged if it appears that the thing to be done is lawful and possible in itself, inasmuch as it is his duty, if he wishes to be excused from performance in the event of such contingency arising, to provide for that situation in his contract.

*Id*. at 154 (internal citation and quotations omitted).

Bulle argues the trial court ignored the evidence that Ericsson and Ericsson's architect, YCH, were responsible for the permitting delay between January and July 2018 and the resulting work stoppage.[9]  *See* Bulle's Brief at 18-22.  Bulle asserts, in part, that Ericsson actively interfered with Bulle's ability to perform the renovation contract in a timely manner.  *See id*. at 18-19

The trial court concluded that it properly found Bulle breached the renovation contract.  The court reasoned that despite Ericsson paying Bulle $188,133 toward the draws and advancing funds for materials for Bulle to continue working during the work stoppage, Bulle deprived Ericsson of "the benefit [Ericsson] reasonably expected, *i.e.*[,] the repair and remodel of the units inside [the property.]"  Trial Court Opinion, 3/31/22, at 20-22.  The court concluded that Bulle "failed to perform [its] obligations multiple times, through no fault of [Ericsson]."  *Id*. at 22

---

[9] Bulle and the trial court refer to a longer delay of nine, ten, or eleven months in obtaining the mechanical permit.  We refer to the permitting delay based on evidence that in January 2018, L&I rejected a permitting application and, in July 2018, L&I approved the mechanical permit.

With respect to the permitting delay and work stoppage, the trial court reasoned that Bulle assumed the responsibility for obtaining permits for the renovation by its course of performance. *See id*. at 14-16, 19. The court noted that the renovation contract was silent as to which party was responsible for obtaining permits, but George Bulle testified that he applied and paid for all permits. *See id*. at 15-16. The court further credited Li's testimony that he believed that Bulle would take care of obtaining permits, including retaining engineers to ensure L&I issued a permit. *See id*. at 16-17.

Following our review, we discern no merit to Bulle's argument that the trial court erred or abused its discretion. Bulle does not challenge the court's finding that it breached the renovation contract by failing to perform along the agreed-upon work schedule. Bulle instead seeks to excuse its non-performance because Ericsson's architect, YCH, failed to provide adequate plans to pass L&I's permitting process in a timely manner. However, the renovation contract lacked any specific term imposing a duty on Ericsson to ensure YCH's plans were accurate, nor does Bulle point to any other contractual language allocating the risks of permitting delays due to defective plans or designs. *See Luria*, 213 A.2d at 153. Furthermore, Bulle does not discuss the court's course-of-performance analysis that Bulle, not Ericsson, ultimately assumed the responsibility for obtaining permits in a timely manner. *See* Trial Court Opinion, 3/31/22, at 19 (noting that Bulle failed to work out the issues with the permit). To the extent Bulle contends Ericsson

- 16 -

interfered with Bulle's ability to perform, Bulle presented no evidence or legal arguments to support its contention that Ericsson took any steps causing the permitting delay for the renovation, had any control over YCH during the permitting delay, or that YCH was acting as Ericsson's agent during the delay.[10] Accordingly, Bulle offers no basis to disturb the court's conclusions that: Bulle's failure to perform constituted a breach of the renovation contract; Bulle, by its course of performance, bore an obligation to obtain the permits necessary for the renovation; and Ericsson did not prevent Bulle's ability to perform.[11]

---

[10] Bulle cites, but does not discuss, cases such as **Coatesville Contractors & Engineers, Inc. v. Borough of Ridley Park**, 506 A.2d 862, 863, 866-67 (Pa. 1986) (holding that Ridley Park Borough interfered with a contractor's ability to remove silt and debris from a lake when the borough failed to meet its requirement to keep the lake drained), and **Dep't of Gen. Servs. v. Pittsburgh Bldg. Co.**, 920 A.2d 973, 987 (Pa. Cmwlth. 2007) (holding that the department actively interfered with a contractor's ability to timely complete a project by withholding information concerning soil conditions at a work site). Given the lack of evidence of active interference by Ericsson, those cases are distinguishable.

[11] Because there is a basis to affirm the trial court's conclusion that Bulle assumed responsibility for the permitting delay and the resulting work stoppage, we need not consider the trial court's factual determinations that Bulle could have continued to work without the mechanical permit. Similarly, we need not consider Bulle's argument that the trial court improperly weighed the one-month delay caused when Bulle refused to pick up the mechanical permit due to a payment dispute with Ericsson.

Materiality of Breach/Substantial Performance

Bulle next claims the trial court erred or abused its discretion in concluding Bulle's breach of the renovation contract was material. *See* Bulle's Brief at 13-18.

To determine whether a breach is material, Pennsylvania courts have found guidance in the following factors, set forth in the Restatement (Second) of Contracts § 241:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1271 (Pa. Super. 2012) (internal citations omitted). The materiality of a breach is an issue of fact that involves "a question of degree[ that] must be answered by weighing the consequences in the actual custom . . . in the performance of contracts similar to the one that is involved in the specific case." *Id*. (internal citations and quotations omitted).

Bulle contends that the trial court should have determined that Bulle partially or substantially performed and, consequently, did not deprive Ericsson of all expected benefits of the renovation contract. *See* Bulle's Brief at 14-15. Bulle notes that all witnesses conceded Bulle completed demolition and framing and started work on the other items in the renovation contract, including the rough-ins, exterior masonry, roofing, basement waterproofing, plumbing, electrical, and sprinklers. *See id*. at 15-17. Bulle notes its evidence that the renovation was nearly 75% complete. *See id*. at 17. Bulle contends that Ericsson only identified minor defects in Bulle's work and already paid 83% of the total contract price, which further supported a finding Bulle substantially performed the renovation. *See id*. at 17-18.

The trial court determined that Bulle "perform[ed] only partial demolition and some rough[-]in work, which can be considered *de minimis* in terms of what was [to be] completed in accordance with the requirements under the scope of the [renovation contract] in its entirety." *See* Trial Court Opinion, 3/31/22, at 22. The court also determined Bulle breached its duty of good faith and fair dealing by performing "minimal work at the property[, running] out of the money that it was paid to be able to do it," waiting one month to pick up the mechanical permit after L&I had approved it, and then presenting Ericsson with "a 'request' for additional money, approximately $98,000[,] . . . to complete the project." *Id*. The court acknowledged that Bulle forfeited some of its efforts; nevertheless, the court concluded that Bulle irreparably damaged the trust between the parties and

Ericsson, therefore, had the right to terminate the renovation contract without giving Bulle notice and an opportunity to cure. ***See id***. at 22-23, 33.

Following our review, we conclude there was competent evidence supporting the trial court's findings that Bulle's performance was minimal and its breach of the renovation contract was material. ***See Gamesa***, 181 A.3d at 1191. Although Bulle completed demolition and framing and began other work at the property, the trial court found more credible Ericsson's evidence which included testimony that Bulle had failed to complete any of the work it started and the work Bulle had performed was done deficiently. ***See*** Order, 5/27/21, unnumbered at 2 (finding that Ericsson's evidence was more credible than Bulle's evidence and awarded Ericsson damages based, in part, on correcting Bulle's deficient work). This evidence included testimony from Rong, the structural engineer whose company inspected the property in September 2018, that the front exterior brick work was incomplete; the second floor was not level; rear exterior stucco was missing a second coat of stucco; windows were not closing properly and not correctly set; there was an active water leak in the basement; the wood framing for a closet began to rot due to water infiltration; and the framing in the basement used untreated lumber. ***See also*** N.T., 5/19/21, at 97-111. Olviero, Ericsson's new contractor who did the front exterior brick work, testified he redid the brick work because "it wasn't done properly." ***See id***. 126-28. Li similarly testified bricks were falling off the front exterior, the basement was soaked with water, there was damage to the rear exterior stucco, two windows did not close

properly, and Bulle had not installed drywall, HVAC, or toilets. **See** N.T., 5/18/21, at 71-73. Li further testified that he paid the first three draws and advanced Bulle funds to continue working during the permitting delay, but Bulle did not do any additional work, and returned in August with a demand for more money. **See id**. at 64-65.

Based on this record, we perceive no basis to disturb the trial court's findings that Bulle performed minimal work and Bulle's breach of the renovation contract was material. The trial court was free to reject George Bulle's testimony that Bulle completed sufficient work to constitute partial or substantial performance of the renovation contract. It is not for this Court to reweigh the evidence or substitute our judgment for that of the trial court. **See Francis**, 293 A.3d at 279. Thus, no relief is due.

<u>Bulle's Counterclaim for Breach of Contract</u>

Bulle also argues that the trial court erred in denying relief on its counterclaims that Ericsson breached the renovation contract. Bulle again alleges that Ericsson was responsible for the permitting delay and the resulting work stoppage and thereby actively interfered with Bulle's performance of the renovation. **See** Bulle's Brief at 18-19, 36-37. Bulle asserts that it completed 75% of the renovation contract along with add-on work. **See id**. at 36. Bulle insists that it partially or substantially performed, and the court should have awarded damages because Ericsson failed to pay Bulle and breached duties of good faith and fair dealing by terminating the renovation contract without explanation or an opportunity to cure. **See id**. at 36-37.

The trial court concluded that because Bulle had materially breached the contract, it had no legal right to recover damages. *See* Trial Court Opinion, 3/31/22, at 39-41. The court found no basis to Bulle's assertions that Ericsson actively interfered with Bulle's performance of the renovation contract or other obligations it assumed by its course of performance. *See id*. at 19, 41.

Our decision to affirm the trial court's decisions that Bulle materially breached the renovation contract obviates the need for further discussion of Bulle's counterclaim for breach of contract. It is well settled that when a party materially breaches a contract, the non-breaching party may terminate the contract and bring an action against the breaching party. *See Gillard v. Martin*, 13 A.3d 482, 487 (Pa. Super. 2010). As our Supreme Court noted, "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009). Instantly, Bulle's material breach gave rise to Ericsson's right to suspend its performance of the renovation contract and terminate it without notice. Thus, we agree with the trial court that Bulle failed to establish its right to recover under a breach of contract theory.

*Ericsson's Claims for Damages – Reasonable Certainty*

Bulle claims that Ericsson failed to produce reasonably certain evidence that its costs of completion included only work contemplated under the renovation contract. *See* Bulle's Brief at 31.

"As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988) (internal citation omitted). However, mere uncertainty as to the precise amount of damages will not preclude a recovery where it is clear that damages were the certain result of the defendant's conduct. *See id*.

Bulle asserts that Ericsson's damages evidence was too indefinite and uncertain to sustain a recovery for Bulle's breach of contract. *See* Bulle's Brief at 27, 31. Bulle contends that Ericsson's new contractors billed the costs of their work as lump sums, which made it impossible to distinguish the costs necessary to complete the renovation contract, the work with respect to add-ons agreed to under the renovation contract, or new work not contemplated in the renovation contract or add-ons. *See id*. at 29-32.

The trial court responds that Ericsson presented competent testimony concerning the costs to finish the renovation after Bulle's breach. *See* Trial Court Opinion, 3/31/22, at 28-29. The court noted that DiCianni, Bulle's own expert, was able to distinguish the costs of materials necessary to complete

the scope of the original contract. ***See id***. at 27-28 (citing N.T., 5/19/21, at 39).

Following our review, we agree with the trial court that Ericsson presented competent evidence establishing, with reasonable certainty, that it suffered damages as a consequence of Bulle's material breach. Reasonable certainty does not require proof of the exact amounts of a party's loss, but a basis for the assessment of damages with a fair degree of probability. ***See Spang***, 545 A.2d at 867 (noting that compensation for a breach of contract "cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof") (emphasis omitted). As noted by the trial court, DiCianni, Bulle's expert, conceded that at least some of Ericsson's claimed damages clearly fell within the scope of the renovation contract. ***See*** N.T., 5/19/21, at 39-40, 68. Thus, we agree with the trial court that there was reasonably certain evidence to justify a recovery by Ericsson for Bulle's breach of contract. ***See Spang***, 545 A.2d at 867.

<u>Ericsson's Claims for Damages – Scope of Work</u>

Bulle next contends that the trial court's award of damages to Ericsson amounted to a windfall because the court included costs outside the scope of the renovation agreement. Bulle asserts that Olviero, whom Ericsson hired for work on the front exterior masonry, installed a different type of brick facade than Ericsson and Bulle had agreed to. ***See*** Bulle's Brief at 31-32. With respect to Wu, Ericsson's other new contractor, Bulle asserts that the

court should have accepted the opinion of DiCianni, its expert, that only a portion of Ericsson's costs for materials clearly matched the scope of the renovation contract and rejected all of Wu's costs for labor. *See id*. at 31-33. In short, Bulle asserts that Ericsson's damages should be limited to DiCianni's calculations of the costs of completing the renovation contract. *See id*. at 33.

The trial court explained that it calculated Ericsson's damages as follows: (1) $17,000 paid to Olviero for the correction of the exterior brick facade; (2) $62,498 for materials for Wu to complete the renovation, which the court noted was consistent with Bulle's expert's opinion;[12] and (3) $64,991 for Wu's labor. *See* Trial Court Opinion, 3/31/22, at 27.[13]

Following our review, we conclude that Bulle has not established a basis for relief. With respect to the $17,000 for Olviero's work on the front exterior brick facade, Olviero testified that he took "the [existing] job down and [did] it again." N.T., 5/19/22 at 125. Olviero explained that he removed the

---

[12] Bulle also contends that the trial court erred by failing to adopt DiCianni's opinion that the $62,498 for materials should be reduced to $54,085 to account for allowances in the renovation contract. However, the sum of Bulle's argument on this point consists of seven lines asserting that the failure to account for allowances resulted in a windfall and a separate assertion that the trial court improperly rejected DiCianni's opinions. *See* Bulle's Brief at 29, 31. We conclude this argument is waived due to the lack of meaningful argument. *See* Pa.R.A.P. 2119(a).

[13] We note that the trial court's opinion states that it awarded Ericsson $65,000 for Wu's labor. *See* Trial Court Opinion, 3/31/22, at 27. However, because the court awarded $144,489 in total damages, $17,000 for Olviero, and $62,498 based on DiCianni's opinions, the remainder would appear to be $64,991 attributable to Wu's labor costs.

existing brick because it was not properly done and was leaking, and he poured a cement foundation, waterproofed it, and placed new bricks. *See id*. at 126-28, 135-36. Although Bulle insists that Olviero installed a different type of brick facade than agreed to by Ericsson and Bulle, Olviero's testimony provided support for the court's conclusions that it was necessary to remove Bulle's work and Olviero "redid" the same job.

With respect to the $62,498 in materials for Wu, we agree with the trial court that this figure was based on the calculations of Bulle's own expert of what corresponded to work within the scope of the renovation contract. *See id*. at 39-40.

As to the costs of Wu's labor, the record is less clear how the trial court arrived at the $64,991 figure, although the court indicated that it awarded Ericsson labor for "the repair of things under the scope of the [renovation] contract." *See* Trial Court Opinion, 3/31/22, at 27. We acknowledge that that DiCianni identified specific areas of work Wu performed that were beyond the scope of the renovation contract. *See* N.T., 5/19/21, at 69 (indicating that Wu cut a sky light into the roof, which was not called for in the renovation contract). We further note George Bulle's testimony that Wu's costs were excessive or unnecessary. However, the trial court, as the finder of fact, was free to reject Bulle's evidence. *See Francis*, 293 A.3d at 279. Moreover, we cannot conclude that the damages were so disproportionate to either the loss suffered by Ericsson or the scope of the renovation contract that Bulle was entitled to relief as a matter of law. Indeed, Bulle does not request a new trial

on damages but rather suggests that we grant relief by adopting DiCianni's opinion. We reject Bulle's invitation to recalculate damages in such a manner and conclude that no relief is due. *See Gamesa*, 181 A.3d at 1191 (noting that the findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury).

### Offsets for Cure and Mitigation

Bulle also asserts that the trial court failed to consider offsets to Ericsson's damages because Ericsson did not allow Bulle to cure and did not take reasonable steps to mitigate damages after terminating the renovation contract. *See* Bulle's Brief at 33-34. Bulle asserts that the court ignored Li's admission to failing to take measures to mitigate damages and the court's own findings that Ericsson fired Bulle without giving it a good faith explanation of deficiencies or opportunity to cure. *See id*.

The trial court rejected Bulle's assertion that Li admitted to failing to mitigate damages. *See* Trial Court Opinion, 3/31/22, at 31. The court noted that Li advanced funds to Bulle for Bulle to continue working, but Bulle did not do so. *See id*. at 31-32. The trial court instead credited Li's explanation that he attempted to find other contractors to continue the work, but that they refused. *See id*. at 32. Moreover, the trial court concluded that Bulle materially breached the renovation contract and could not complain that Ericsson denied it an opportunity to cure. In any event, the court noted that Bulle bore the burden of establishing offsetting damages for lack of mitigation. *See id*. at 31.

Following our review, we conclude that Bulle identifies no error or abuse of discretion in the trial court's analysis. We agree with the trial court that Bulle's legal argument is unfounded and Bulle offered no evidence concerning the amount of offsets it would be due. Therefore, Bulle's claim fails.

Appropriate Measure of Damages for Bulle's Breach – Avoidance of Costs

Bulle also asserts that the trial court erred or abused its discretion by calculating Ericsson's damages using a reasonable cost of completion approach without accounting for what Ericsson still owed Bulle pursuant the renovation contract. Bulle contends that the trial court should have applied the principle in **Oelschlegel** that "the measure of an owner's damages for a construction contractor's breach is the cost of completing the contract or correcting the defective work, minus the unpaid part of the contract price." **See** Bulle's Brief (quoting **Oelschlegel**, 633 A.2d at 184).

The trial court rejected Bulle's reliance on **Oelschlegel**, reasoning that the rule did not apply where the contractor performed minimal work. **See** Trial Court Opinion, 3/31/22, at 25-26. The trial court concluded that Ericsson's unreduced cost of completion was appropriate. **See id**. at 26.

Following our review, we conclude the trial court erred. The principle set forth in **Oelschlegel** reflects the view that the non-breaching party's damages must be reduced by the costs the non-breaching party avoided by no longer having to perform the contract. **See Oelschlegel**, 633 A.2d at 184; **see also** Restatement (Second) of Contracts §§ 347 and 348, Illustration 2 ("A contracts to build a house for B for $100,000 but repudiates the contract

after doing part of the work and having been paid $40,000. Other builders will charge B $80,000 to finish the house. B's damages include the $80,000 cost to complete the work less the $60,000 cost avoided or $20,000 . . ..").  ***Oelschlegel*** is not distinguishable because that case involved construction defects or because the work Bulle performed here was minimal.  ***See id***. at 184-85 and n.2 (noting that only that the cost-avoidance rule may not apply in cases where the contractor substantially performed).  Rather, ***Oelschlegel*** states that the cost-avoidance rule applies where, as here, an unpaid balance remains on the breached contract.  ***See id***.  Allowing Ericsson to avoid costs associated with the completion of the renovation contract would place Ericsson in a better position than it would have been absent the breach.  ***See id***.

Accordingly, we conclude the cost-avoidance principle applies and that the trial court erred in declining to reduce damages on that basis.  Therefore, we must vacate the judgment to allow for a correction of the judgment to account for the costs Ericsson avoided when terminating the renovation contract.

<u>Costs Avoided</u>

Because the specific terms and costs attributable to the renovation agreement are relevant to a proper calculation of Ericsson's damages, we consider Bulle's claims concerning the costs that were owed when Bulle breached, and Ericsson terminated, the renovation contract.  Here, the balance remaining on the renovation contract was, as the parties agree, $37,867.  The unpaid balance of the original price of the renovation contract

was part of the costs Ericsson avoided. ***See Oelschlegel***, 633 A.2d at 184; ***see also*** Restatement (Second) of Contracts §§ 347 and 348, Illustration 2.

With respect to add-on work, Bulle contends that those costs became part of the renovation contract because Ericsson's silence operated as acceptance of George Bulle's proposals for add-ons. ***See*** Bulle's Brief at 40-41. Bulle contends that George Bulle discussed add-on work with Li, memorialized the work and the costs of the work in written updates to Ericsson, and Bulle performed the work on the add-ons without objection from Ericsson. ***See id***. Bulle thus asserts that the costs of the add-ons became part of the renovation contract that Ericsson was obliged to pay.

The trial court reasoned that Bulle could not seek the costs of add-ons because Ericsson had not expressly confirmed any of the change orders. ***See*** Trial Court Opinion, 3/31/22, at 41-42. The court noted that George Bulle would discuss problems at weekly or bi-weekly meetings, Li would ask what should be done, and that Li directed George Bulle to "take care of it." ***See id***. at 42. The court refused to consider those discussions as an agreement regarding the add-on work because Bulle provided no evidence those discussion included an agreement on the costs of that work. ***See id***. The court noted, in passing, that some of the costs for add-ons were originally contemplated under the renovation contract or money that Ericsson paid Bulle. ***See id***.

We agree with the trial court that Bulle failed to demonstrate the existence of an agreement between Bulle and Ericsson over the scope or costs

of the add-ons. Specifically, we discern no basis to disturb the trial court's finding that George Bulle's discussions with Li did not include discussions of costs. Moreover, Bulle did not establish that his written updates were sufficiently clear as to presume an understanding of, and agreement to, the add-on work and costs.[14] Nor did the conversations and updates establish that Ericsson had a duty to speak when Bulle noted added work. *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995) (noting that "[s]ilence will not constitute acceptance of an offer in the absence of a duty to speak"). Accordingly, the trial court properly rejected Bulle's silence-as-acceptance theory that the costs of the add-ons became part of the renovation contract, and Ericsson cannot be said to have avoided the costs of add-on work when it terminated the contract.

As to the costs of permits, Bulle asserts that the renovation contract stated that Ericsson was responsible to pay for building permits. *See* Bulle's Brief at 29. The trial court did not consider whether those costs became part of the renovation contract or how much the permits cost. Therefore, we conclude that a remand is appropriate for the trial court to consider whether Ericsson avoided the costs of permits and the amount of those costs.

_____

[14] We add that Bulle would, at times, represent that it would bear the costs of some add-on work, including, for example, obtaining an architectural report concerning the fire-damaged beam. *See* N.T., 5/19/21, at 187; *see also* Summary of Unforeseen Expenses (undated) at 1 (indicating that Bulle would assume the cost of basement concrete and waterproofing) (admitted as Exhibit D-29 at trial).

Thus, we vacate the damages award and remand for correction of the damages based on costs avoided by Ericsson. This shall include the unpaid balance of the original contract price and, if appropriate, the costs of permits.

**Issue III**

Bulle's third issue concerns the applicability of CASPA. Bulle contends the trial court erred in refusing to apply CASPA because the renovation contract called for a mixed-use commercial and residential construction with only two residential units. *See* Bulle's Brief at 41. Bulle directs this panel to ***El-Gharbaoui***, which this Court decided shortly after the denial of Bulle's post-trial motions and the entry of judgment in this matter. *See id*. at 41-42. Bulle provides a rough outline of CASPA, absent any meaningful discussion of the record, to assert that it was entitled to interest, attorney's fees, and expenses related to Ericsson's failures to pay. *See id*. at 44-46 (requesting that this Court award Ericsson the damages it set forth in a trial exhibit).

The trial court concluded that CASPA did not apply for two reasons. First, it noted that Bulle was not a substantially prevailing party. *See* Trial Court Opinion, 3/31/22, at 44-45. Second, it asserted that CASPA did not apply because the renovation contract called for less than two residential units. *See id*.

While we agree that the trial court's assertion that CASPA did not apply to the renovation contract was in error, we conclude no relief is due. In ***El-Gharbaoui***, the subject contract called for the renovation of a property that

included a church on the first floor and two upstairs apartments. *See El-Gharbaoui*, 260 A.3d at 955. The trial court in that case concluded that CASPA did not apply because the statute states it does not apply to improvements to real property which consist of six or fewer residential units which are under construction simultaneously. *See id*.; *see also* 73 P.S. § 503(a). This Court rejected the trial court's conclusion and held that "CASPA applies to construction contracts except those contracts involving public works projects and construction contracts for the improvement to real property consisting *solely* of six or fewer residential units under construction simultaneously." *El-Gharbaoui* 260 A.3d at 956 (emphasis in original).

Here, similar to the contract and property at issue in *El-Gharbaoui*, the renovation contract called for the development of a mixed-use commercial and residential property and was not limited *solely* to six or fewer residential units. Thus, the trial court's conclusion that CASPA did not apply because of the nature of the property or the improvements under the renovation contract, that conclusion is inconsistent with *El-Gharbaoui* and was in error.

Having concluded that CASPA applied, we are constrained to note that aside from a passing reference to Ericsson's failure to provide written notice of the deficiencies in Bulle's work, Bulle provides no analysis of how an owner's duties apply to the facts of this case where Ericsson paid the third draw late, but Bulle then materially breached the renovation contract by failing to

perform.[15]  Moreover, Bulle offers no argument that the trial court erred in concluding it was not a substantially prevailing party entitled to penalties under section 512.  In short, Bulle has identified an error of law in so far as the trial court should have applied CASPA, but Bulle's remaining assertions do not develop either a factual or legal basis for reversing the judgment as a matter of law.  Thus, we conclude this issue is waived and will not address it further.  ***See Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (noting that arguments which are not appropriately developed are waived, we will not act as counsel and develop arguments on behalf of an appellant, and mere issue spotting without analysis or legal citation . . . precludes our appellate review of a matter") (internal citations, quotations, and brackets omitted).

**Issue IV**

In its final issue, Bulle asserts that the trial court erred in denying its motion *in limine*.  **See** Bulle's Brief at 46.  Bulle claims that the trial court violated the law of the case doctrine because the motions court granted it a protective order concerning its bank accounts.  ***See id***.

---

[15] Section 505 sets forth an owner's duty to pay a contractor "strictly in accordance with terms of the construction contract," and imposes interest at a rate of 1% per month on the balance that is "due and owing."  **See** 73. P.S. § 505(a), (d).  Section 506 permits an owner to withhold payment for "deficiency items," but the owner must  notify the contractor of the deficiency item by a written explanation of its good faith" reason for withholding payment.  **See** 73 P.S. § 506(a), (b)(1).  The owner's failure to comply with the written notice requirement "shall constitute a waiver of the basis to withhold payment and necessitate payment of the contractor in full for the invoice."  **See** 73 P.S. § 506(b)(2).

Although Bulle asserted in its Rule 1925(b) statement that the trial court erred in denying its motion *in limine* solely because evidence of a contractor's costs was irrelevant; it did not indicate that the trial court violated the law of the case doctrine. **See** Bulle's Rule 1925(b) Statement, 8/18/22, at 9. The law of the case doctrine is not a subsidiary issue to the one stated by Bulle in its Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(v), (vii). Therefore, Bulle's law of the case argument is waived, and we will not address it.

**Conclusion**

Having reviewed the record, the trial court's opinion, and the parties' arguments, we affirm the trial court's decision that Bulle, not Ericsson, breached the renovation contract, and Bulle's breach was material. Bulle has not demonstrated error in the trial court's consideration of the evidence presented regarding Ericsson costs of completion. Bulle has waived its issues concerning its alleged entitlement to interest and penalties under CASPA and the denial of its motion *in limine*.

However, Bulle is correct that the proper measure of damages must consider the costs that Ericsson avoided when it terminated the renovation contract, including the original balance owed, as well as any outstanding costs agreed to by the parties.

Thus, while we affirm the judgment in part, we vacate the judgment in part and remand for the trial court to consider the evidence concerning the outstanding balance owed by Ericsson under the renovation agreement and the costs of permits. Although the parties appear to agree upon the

outstanding balance owed on the renovation contract, issues concerning the costs of permits remains unsettled. The court may hold additional hearings as it deems necessary to whether the costs of permits are part of the contract and to determine the costs of permits. The court shall enter a corrected award reduced by the costs Ericsson avoided due to Bulle's breach of the renovation contract.

Judgment affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/10/2025